IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELVIN SANDERS,

           Petitioner,

vs.

R. M. REISH, WARDEN,

           Respondent.

1 : CV00-1866

EASTERN DISTRICT OF NEW YORK

CASE NO. CR-92-721-3

FILED
SCRANTON

OCT 1 9 2000

PER _____
DEPUTY CLERK

PETITIONER'S MOTION PURSUANT TO TITLE
28 U.S.C. §2241 WRIT OF HABEAS CORPUS

    I, Melvin Sanders, pro se, in want of counsel, the above
captioned Petitioner, is a federal prisoner being held in illegal
custody in violation of the United States Constitution by Warden
R. M. Reish, at the FCI Schuylkill Federal Correctional Institution
located in Minersville, Pennsylvania, which is within the jurisdic-
tion of this Court. Petitioner is being held in custody by virtue
of the Judgment and Commitment entered on July 13, 1993 in the
Eastern District of new York to Case No. Cr-92-721-3.

    Petitioner, Melvin Sanders, is challenging the legal entirety
of his indictment to be in violation of the United States Consti-
tution and should be entitled to redress by this Court pursuant
Title 28 U.S.C. §2241.

### STATEMENT OF PETITIONER'S CASE

    Petitioner, Melvin Sanders was arrested on June 5, 1992,
by agents of the I.R.S., Internal revenue Service, during a
routine conspiracy investigation for attempted extortion.

    Petitioner was indicted on or about June 24, 1992. On
February 10, 1993, Petitioner pled guilty to a single count
indictment of conspiracy to commit extortion in violation of

-1-

Title 18 U.S.C. §1951 of the Hobbs Act.

Petitioner was sentenced on April 30, 1993 to 151 months incarceration and 3 years supervised release.

Petitioner raises three Constitutional violations in the Indictment to present to this Court for its consideration and judgment to VACATE sentence and conviction imposed on Petitioner.

## I.   FIRST ELEMENT RAISED

The Hobbs Act proscribes a number of seperate offenses, each such offense also requires a separate offense under the statute.  Petitioner's indictment charged two such offenses; conspiracy and attempt to extort.  Both are improperly charged in a single count.  Actual extortion and attempted extortion and conspiracy are separate offenses under the Hobbs Act.  If a separate and discrete attempted extortion was present, then this should have been charged in a separate count from the conspiracy.  In a Hobbs Act 18 U.S.C. §1951 prosecution charges of conspiracy and attempted extortion could not be properly included in the same count since they are separate offenses under the statute.  The Court of Appeals for the Third Circuit held that indictment was duplicitous where in the same count it charged both a conspiracy and an attempt extortion, that government should be required to make a pretrial election between the conspiracy and the attempted charges. See United States v. Starks, 515 F.2d 112, 116 (3rd Cir.); United States v. Blair, 762 F.Supp. 1384, 1386.

In a Hobbs Act prosecution, offenses of conspiracy and attempt could have been included in separate counts of the same

indictment since they were alleged to have been based on acts or transactions connected together, but they could not be properly included in the same count.  For both an attempt to extort and a complete act of extortion, has no relevance in the legal consequences of the two incontestably distinctive offenses, conspiracy and the completed crime that is the object.  Duplicity is the joining of a single count of two or more distinct and separate offenses.

The Supreme Court expressly concluded that it was Congress's intent to maintain in the Hobbs Act the long-established distinction between the commission of a substantive offense and of a conspiracy as separately defined crimes even though both are contained in the same provision.  Pinkerton v. United States, 328 U.S. 640, 643, 90 L.Ed.2d 1489, 1494, 66 S.Ct. 1180; Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312, 317; United States v. Abney, 530 F.2d 963 (3rd Cir.), also at 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651; United States v. Starks, 515 F.2d 112, 116, 118 (3rd Cir.).

## II.   SECOND ELEMENT RAISED

The government had not proved a violation of Title 18 U.S.C. §1951(b)(3).  Petitioner's indictment did not prove an actual potential direct effect on interstate commerce to justify federal jurisdiction nor was Petitioner indicted on charges for violating a business engaged in interstate commerce.

An attempted extortion on an individual does not satisfy the interstate commerce element of Hobbs Act merely because the individual happens to be an employee of a company.  The evidence in Petitioner's indictment establishes that the Complaintant,

Jeffrey Cooper, is an individual and whose only connection with
interstate commerce was his employment by a business engaged
in interstate commerce, and that the business itself was not
affected nor was part of the attempted extortion.

It is suggested that the extortion attempt might have affected
the performance of his employment duties, but this linkage to
his business is very much too indirect to present a sufficient
nexus with interstate commerce to justify federal jurisdiction
under the Hobbs Act. The reading of the statute makes clear that
it is not every act of extortion which is punishable thereunder,
only the obstruction , delay, or affection of interstate commerce
by means of extortion gives federal courts jurisdiction.   This
argument, however, overlooks the point that alleged conspiracy
to extract money from Complaintant Jeffrey Cooper did not in
and of itself affect interstate commerce , one of the essential
elements of proof required to establish a violation of the Hobbs
Act.   The government was required by law to prove beyond a reason-
able doubt, before there is any federal jurisdiction, that the
natural consequences of the acts alleged in the indictment.
This proof on Petitioner was insufficient to support a conviction
under the Hobbs Act by law. See United States v. mattson, 671
F.2d 1020 (7th Cir.); United States v. Collins, 40 F.3d 95 (5th
Cir.); United States v. Wang, No. 98-6490 (August 3, 2000 6th
Cir.).   See also Exhibits A, B, & C.

First, it is very doubtful whether the depletion of personal
assets theory applies at all in a Hobbs Act violation when the
victim of the attempted extortion is an individual rather than
a business engaged in interstate commerce.

Extorting money to be devoted to personal use from an individual does not affect interstate commerce. The depletion of assets theory is not available when the victim is an individual as opposed to a business. The indictment charges an affect on interstate commerce, in that money was requested, in plain english, that charges an effect on interstate commerce by the payment of money from an individual does not violate the Hobbs Act.

The government's argument about the threatened force, violence and fear to Complaintant would surely have impacted interstate commerce if implemented also does not bear analysis in terms of what the indictment charges. Remember again, the indictment says in Exhibit A, that Petitioner attempted to affect interstate commerce by extorting money from Complaintant. This did not represent an effect or attempted affect upon a business engaged in interstate commerce. An individual may be extorted in a manner which would affect interstate commerce, if the actual extortionate payment forces the individual to perform a direct interstate transaction. See United Statesv. Kaye, 593 F.Supp. 193, 197; United States v. Mattson, 671 F.2d 1020, 1024.

In United Stats v. Hoelker, 765 F.2d 1422 (8th Cir.), the indictment alleges that an individual victim was threatened with physical violence in order to force the victim to sign a life insurance policy application, which named the defendant as the benificiary. The indictment further stated that the policy was to be issued by the Kentucky Central Life Insurance Company, a business engaged in interstate commerce, and that one of the defendants had submitted the application to the company to have the policy approved.

Here, the extortion was from an individual, but the actual property extorted necessarily required an interstate commercial transaction, namely the purchase of life insurance from an out of state company.  The extorted payment itself forced the individual victim to perform an act of interstate commerce, which made  it a violation of the Hobbs Act, 18 U.S.C. §1951.

In Petitioner's case, the intent to extort money from victim personally, and not from a business, or an attempt on his personal business, would not support a conviction under the Hobbs Act. See United States v. Buffey, 899 F.2d 1402, 1406.

In federal jurisdiction, robbery and extortion of individuals does not satisfy the interstate commerce element of the Hobbs Act, 18 U.S.C. §1951.  Robberies of individuals will ordinarily not satisfy the interstate commerce element, a majority of the United States Court of Appeals for the Sixth Circuit decided on August 3, 2000, in United States v. Wang, supra.  There is an important difference between the robbery of a business engaged in interstate commerce and the robbery of a private individual, even one who is employed by an interstate business, the majority held in United States v. Wang, supra.

The Circuits that have considered the issue, have recognized that extortion or robbery of a private citizen that causes only a speculative indirect affect on a business engaged in interstate commerce, will not satisfy the jurisdictional requirement of the Hobbs Act.  The majority reported with the approval of the Fifth Circuit's refussal in United States v. Collins, 40 F.3d 95, 100 (5th Cir. 1994).

Extortion of a private citizen does not, through aggregation,

effect interstate commerce merely because the individual happens
to be an employee of a national company, or happens to be carrying
proceeds from a restaurant, does not affect the Hobbs Act.  When
the government seeks to satisfy the Hobbs Act's jurisdictional
nexus by showing a connection between an individual victim and
a business engaged in interstate commerce, that connection must
be a substantial one, not one that is fortuitios or speculative.
The government made no such showing in Petitioner's conviction.
A review of Petitioner's Indictment, Exhibit A, will show that
Petitioner was not indicted for extorting a business but for
extortion on an individual who happens to be an employee of a
company that does business in interstate commerce, which the
business had no connection with the attempt extortion.

      We are persuaded that if the extortion of an individual
were found to affect the real or perceived disruption of the
individual work, the reach of 18 U.S.C. §1951 would be ubiquitous,
in our closely interwoven economy.

      The Hobbs Act's definition of commerce is coextensive with
the congressional commerce power extends only to conduct which
exerts a substantial economic effect on interstate commerce.
It is manifest that Congress may not regulate conduct that, standing
alone, does not directly affect interstate commerce or have direct
effect on the business engaged in interstate commerce.  A finding
of the requisite nexus herein would be in stark conflict with
the principle that our federal government has limited and enumerated
powers, with routine police power generally being reserved to
the States.  Unless Congress conveys its purpose clearly, it
will not be deemed to have significantly changed the federal

state balance.  United States v. Kaye, 593 F Supp. 193, 197,
199; United States v. Mattson, supra; United States v. Collins,
supra.

### III.   THIRD ELEMENT RAISED

Petitioner was arrested on June 5, 1992, in the eastern
District of New York, by agents from the I.R.S. who were from
the Southern District of New York.

Now, how did the Petitioner come to be arrested by agents
of the I.R.S. for conspiracy to commit extortion by agents who
were from another district from where the alleged conspiracy
had taken place and not by the proper law enforcement of the
State of New York or by the F.B.I. from the Eastern District
of New York?

On or about April 28, 1991, complaintant Jeffrey Cooper,
was previously arrested by agents from the I.R.S. who were out
of the Southern Distirct of New York, for money laundering, a
year before Petitioner was arrested.  Unknown to the Petitioner
at time of the alleged conspiracy that complaintant Cooper, had
contacted the I.R.S. agents who had arrested him, at the beginning
of the conspiracy, to inform the I.R.S. agents of the attempted
extortion made upon him and the same I.R.S. agents just so happened
to be the same ones to have arrested Petitioner on this charge.
Why hadn't the I.R.S. agents notified prosepective law enforcement
of the State of New York or the F.B.I. at that point in time,
who had jurisdiction governing over the Eastern District where
the alleged conspiracy had taken place, being that the I.R.S.
agents knew about it from the start?  Petitioner believes and
now knows because there was no direct or indirect affect upon
the interstate commerce to satisfy federal jurisdiction elements

-8-

under the Hobbs Act, is why the prospective law enforcement was
not contaced in Petitioner's case.  Extortion or Attempted extortion
on a private individual does not, through aggregation, affect
interstate commerce element of Hobbs Act merely because the indi-
vidual happens to be an employee of a company.  Because the I.R.S.
agents learned of the conspiracy before it came to fruitation,
a direct affect on interstate commerce was impossible.  The
I.R.S. never would have allowed it by law to satisfy the jurisdic-
tion]al element under the Hobbs Act.  See United States v. Buffey,
supra; Collins, supra.


## CONCLUSION

The case of United States v. Starks, 515 F.2d 112 was argued
on February 27, 1975 and decided on April 21, 1975 (Amended June
24, 1975), before Justices Van Russen, Gibbons, and Hunter, of
the Third Circuit Court of Appeals.  The Court stated that there
are a number of separate offenses that the Hobbs Act proscribes:
1) Robbery; 2) Extortion; 3) Attempted Robbery or Extortion;
and 4) Conspiracy to Commit Robbery or Extortion.  The Court
found that each such offense also requires the federal jurisdictional
element of obstruction, delay, or effect on interstate commerce.
Also stated, the indictment [of Starks] charged two such offenses,
conspiracy to extort and attempt to extort.  Since both were
improperly charged in a single count, the defendant's pre-trial
motions that the indictment be dismissed, or that the government
be required to elect should have been granted.

As the Court reviews Petitioner's indictment, the review
would also show a case of duplicity, the joining in a single

-9-

count of two or more direct and separate offenses.

Petitioner raises two principle questions of importance to be reviewed by this Court pertaining to his judgment of conviction and sentence. The Hobbs Act element requires that interstate commerce be affected by extortion. There must be a nexus between extortion and interstate commerce before federal jurisdiction is present. The only nexus here was between the attempted extortion of Complaintant and the Petitioner.

There was no nexus between the attempt extortion of complainative and complaintative business to violate federal jurisdiction. The extortion of a private individual that causes only a speculative indirect effect on a business engaged in interstate commerce will not satisfy the jurisdictional requirement of the Hobbs Act. There are two things that are of paramount importance here, our rule of law has been preserved in which no one can be convicted merely because he or she is a bad person, but conviction can be obtained only because every element of the crime actually charged has been proved beyond a reasonable doubt.

Petitioner asserts his actual innocence and for the Court not to act upon this motion would constitute a miscarriage of justice. Petitioner's motion has substantial merit and there is a substantial likelihood that he will prevail on those claims.

WHEREFORE, Petitioner respectfully requests and prays that this Court grants the Petitioner all relief deemed just and proper.

Executed on this 7
day of October, 2000.

Respectfully Submitted,

*Melvin Sanders*
Melvin Sanders, Pro Se
Register No. 14136-053
P.O. Box 759
Minersville, PA 17954-0759

# PROOF OF SERVICE

**I Certify that on** October , 2000 **(date) I mailed a copy of this brief and all attachments via first class mail to the following parties at the addresses listed below:**

```
Office of the Clerk
U.S. District Court
235 N. Washington Ave.
P.O. Box 1148
Scranton, PA 18501
```

# PROOF OF SERVICE FOR INSTITUTIONALIZED OR INCARCERATED LITIGANTS

**In addition tot he above proof of service all litigants who are currently institutionalized or incarcerated should include the following statement on all documents to be filed with this Court:**

**I certify that this document was given to prison officials on** October 7 , 2000. **(date) for forwarding to the Court** .**I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. 1746.**

_Melvin Sanders_                    October 7 , 2000.
**(Signature)**                              **(Date)**

Melvin Sanders, Pro Se

-11-

*Exhibit-A-*

CWG:JEK
F.#
JK200031

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -

DEBORAH BRUMBY,
GEORGE JOHNSON and
MELVIN SANDERS, also
  known as "Cool,"

      Defendants.

- - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 92 CR 721
(T. 18, U.S.C., §§
  1951 and 3551 et seq.)

THE GRAND JURY CHARGES:

      1.   On or about and between May 14, 1992 and June 5, 1992, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DEBORAH BRUMBY, GEORGE JOHNSON and MELVIN SANDERS, also known as "Cool," together with others did knowingly and wilfully conspire to obtain and attempt to obtain certain property, to wit, sums of money, from and with the consent of Jeffrey Cooper, which consent was induced by wrongful use of actual and threatened force, violence and fear, and thereby did obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

      2.   It was part of the conspiracy that the defendants DEBORAH BRUMBY, GEORGE JOHNSON and MELVIN SANDERS, also known as "Cool," would and did threaten and intimidate Jeffrey Cooper for the purpose of extorting money from him.

*Ex·A·*

3.  In furtherance of the conspiracy and to accomplish its objectives, within the Eastern District of New York and elsewhere, the defendants DEBORAH BRUMBY, GEORGE JOHNSON and MELVIN SANDERS, also known as "Cool," and others committed and caused to be committed the following:

### OVERT ACTS

(i)  On or about May 14, 1992, a conspirator visited the home of Jeffrey Cooper.

(ii)  On or about May 15, 1992, a conspirator visited the home of Jeffrey Cooper.

(iii)  On or about May 18, 1992, a conspirator identifying himself as "Johnny" telephoned Jeffrey Cooper and demanded payment of a sum of money.

(iv)  On or about May 19, 1992, "Johnny" telephoned the home of Jeffrey Cooper and left a message on a telephone answering machine threatening Cooper and demanding payment of a sum of money.

(v)  On or about May 21, 1992, the defendants DEBORAH BRUMBY and MELVIN SANDERS, also known as "Cool," and another came to Jeffrey Cooper's office and spoke to Cooper about meeting "Johnny."

(vi)  On or about May 27, 1992, a conspirator telephoned Jeffrey Cooper and threatened to blow up Cooper's "place" unless Cooper paid a sum of money.

(vii)  On or about May 29, 1992, a conspirator telephoned the home of Jeffrey Cooper and left a threatening message on a telephone answering machine.

*Ex. A.*

(viii)  On or about May 29, 1992, "Johnny" and a conspirator identifying himself as "Mark" telephoned Jeffrey Cooper and threatened the lives of Cooper's children.

(ix)  On or about June 4, 1992, "Johnny" telephoned Jeffrey Cooper and demanded payment of a sum of money.

(x)  On or about June 5, 1992, the defendant GEORGE JOHNSON came to Jeffrey Cooper's office to pick up a sum of money from Cooper.

(xi)  On or about June 5, 1992, the defendant MELVIN SANDERS, also known as "Cool," proceeded to the vicinity of 170th Street and Hillside Avenue, Queens, New York.

(Title 18, United States Code, Sections 1951 and 3551 <u>et seq</u>.)

A TRUE BILL

_____
FOREPERSON

_____
ANDREW J. MALONEY
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Ex. A.

FORM DMD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

__EASTERN__ District of ___NEW YORK___

___CRIMINAL___ Division

## THE UNITED STATES OF AMERICA

vs.

_DEBORAH BRUMBY, GEORGE JOHNSON and_

_MELVIN SANDERS, also known as "Cool,"_
Defendants.

## INDICTMENT

Title 18, United States Code, Sections 1951 and 3551 et seq.

A true bill.

_____
Foreman

Filed in open court this _____ _____ day,

of _____ _____ A.D. 19 _____

_____
Clerk

Bail, $ _____

J. Katzman, AUSA, 330-2859

Exhibit-B-B

BP-S187.058    **PROGRESS REPORT** CDFRM
FEB 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Institution | Date |
|---|---|
| FCI Schuylkill, Pennsylvania | March 9, 1999 |

**Inmate Reviewed**

| Inmate's Signature | Date | Staff Signature |
|---|---|---|

1.  Type of Progress Report

   Initial          Statutory Interim        Pre-Release
   Transfer     XX Triennial                Other (Specify)

| 2. Inmate's Name | 3. Register Number | 4. Age (DOB) |
|---|---|---|
| SANDERS, Melvin | 14136-053 | 41 (11-04-1957) |

5.  Present Security/Custody Level

   Medium/ In

6.  Offense/Violator Offense

   Conspiracy to Commit Extortion

7.  Sentence

   151 Months Imprisonment; 3 Years Supervised Release; $50.00 Assessment

| 8. Sentence Began | 9. Months Served | 10. Days GCT |
|---|---|---|
| 04-30-1993 | 71 Months + 329 Days JCT | 324 Awarded/ 592 Projected |

| 11. Days FSGT/WSGT/DGCT | 12. Projected Release | 13. Last USPC Action |
|---|---|---|
| 0/0/0 | 05-23-2003 via GCT | N/A |

14.  Detainers/Pending Charges

   Mr. Sanders has no known detainers or pending charges.

15.  Co-defendants

   N/A

For Continuation Page, type on a blank sheet with the Inmate's Name,
Register No., and Date and attach to this form.

Record Copy - Inmate File; Copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable); copy - Inmate

(This form may be replicated via WP)                    Replaces all BP-CLASS-3 and BP-187(58) of NOV 90

14136-053

*Exhibit-C-*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| MELVIN SANDERS | ) | DOCKET NO. 92-CR-721-03 |
| | ) | |

---

**Prepared for:**  The Honorable Denis R. Hurley
United States District Judge

**Prepared by:**  David J. Washington
United States Probation Officer

**Assistant U.S. Attorney**          **Defense Counsel**
Julie Katzman, Esq.          Alan Polak, Esq. (Appointed)
225 Broadway, Suite 515
New York, NY 10007
(212) 619-3545

**Sentence Date:** April 23, 1993 at 9:30 A.M.

**Offense:**  18 USC 1951, CONSPIRACY TO COMMIT EXTORTION, A CLASS C
FELONY

**Release Status:**    In custody since June 5, 1992

**Detainers:**    Parole Violators Warrant (see paragraph 38)

**Other Defendants:**    See page 2

**Date Report Prepared:** March 25, 1993